IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNEST VIDALES, <br> (TDCJ-CID #01305837) <br> Plaintiff, | § § § § | |
| vs. | § § | CIVIL ACTION H-14-2521 |
| WILLIAM STEPHENS, *et al.*, <br> Defendants. | § § § | |

## MEMORANDUM AND OPINION

Ernest Vidales, a Texas Department of Criminal Justice inmate, sued in August 2014, alleging civil rights violations resulting from a denial of access to the courts. Vidales proceeding pro se and *in forma pauperis*, sues William Stephens, Director of TDCJ-CID; and Kevin Mayfield, Assistant Warden of Wynne Unit.

The threshold issue is whether Vidales's claims should be dismissed as frivolous. The court concludes that Vidales's claims lack merit and should be dismissed for the reasons stated below.

I.     **Plaintiff's Allegations**

Vidales states that while confined at the Hughes Unit in September 2012, he was temporarily transferred to the Wynne Unit, and his personal property was stored in the property room. Upon his return to the Hughes Unit, Vidales realized that several items of his personal property were missing. Upon his subsequent transfer to the Wynne Unit, Inmate Jenkins, a writ writer, assisted Vidales in filing a federal petition for a writ of habeas corpus concerning the loss of property at the Hughes Unit.

Vidales alleges that on August 7, 2014, Inmate Jenkins delivered the brief concerning the lost property to Vidales at his workplace in the Wynne Unit laundry. Vidales inadvertently left

the legal work behind, and a fellow inmate, Zamora picked up the legal work with the intention of returning it to Vidales. As Inmate Zamora was walking down the hall, Assistant Warden Maryfield stopped Zamora and confiscated the brief.

Vidales complains that Assistant Warden Maryfield refused to return the brief to Vidales. As a result, Vidales claims that he missed the filing deadline of August 30, 2013. Vidales states that he never filed the federal petition because he missed the deadline.

Vidales submits grievances concerning the lost property at the Hughes Unit and the confiscated legal work at the Wynne Unit. Regarding the confiscated legal work, prison officials advised Vidales that he was unable to prove ownership of the legal work. Prison officials further advised Vidales that he was not permitted to have legal work at his workplace in the unit laundry.

Vidales seeks compensatory damages of $60,000.

## II. Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A governs this suit by a prisoner against a prison official.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001)(citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)(quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

### III. Analysis

Vidales is complaining of the denial of access to the courts. Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). However, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, "meaningful access to the courts is the touchstone." *Id.* (internal quotation marks and citation omitted). To prevail on a claim of denial of access to courts, a prisoner must show actual injury. *Id.* at 349-52; *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998) (citation omitted); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996).

In *Christopher v. Harbury*, 536 U.S. 403 (2002), the widow of a murdered Guatemalan citizen brought a *Bivens* action, contending, among other things, that certain federal officials

concealed and covered up information regarding her husband's fate, and ultimate death, and that such concealment denied her the right of access to the courts. *Id.* In *Harbury,* the Supreme Court observed that access-to-courts claims fall into two categories: claims that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," where the suits could be pursued "once the frustrating condition has been removed," and claims of "specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury,* 536 U.S. 403, 413-14 (2002). Regardless whether the claim "turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15. A claim for deprivation of one's constitutional right of access to the courts must set forth in the complaint (1) "the underlying cause of action, whether anticipated or lost," and (2) "the official acts frustrating the litigation." *Id.* Moreover, to prevail on an access-to-courts claim, an actual injury must result from the defendant's conduct. *Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis v. Casey,* 518 U.S. 343, 351-54 (1996)). Thus, the access-to-courts right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. It follows that the underlying claim is an element that must be described in the complaint as though it were being independently pursued; and that, when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. The underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give the defendant fair notice. The plaintiff must describe the predicate claim well

enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope. *Harbury,* 536 U.S. at 416.

In evaluating Vidales's access-to-court claim, this court considers the merits of the underlying claim Vidales wished to litigate. Vidales complains that he was unable to file a complaint concerning the loss of property at the Hughes Unit. The wrongful deprivation of property does not implicate the Fourteenth Amendment if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984). Vidales has a right of action under Texas law for any alleged negligent or intentional deprivation of property. *See Thompson v. Steele,* 709 F.2d 381, 383 (5th Cir. 1983); *Myers v. Adams,* 728 S.W.2d 771, 772 (Tex. 1987).

Any claim by Vidales against the Hughes Unit for the deprivation of property would fail. Vidales has not demonstrated that his position as a litigant was prejudiced by his denial of access to the courts. This claim lacks merit.

Vidales's claim based on the confiscation of his legal work lacks merit. As noted, Vidales was unable to prove ownership of the confiscated materials. Further, he was not authorized to have personal items, such as legal work, at his workplace in the Wynne Unit laundry. "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Wilkerson v. Stalder,* 329 F.3d 431 (5th Cir. 2003) (quoting *McCord v. Maggio,* 910 F.2d 1248, 1251 (5th Cir. 1990)). Given the difficulties in maintaining order in a prison, the courts are hesitant to interfere with the prison administration's handling of its disciplinary affairs. *See Rhodes v. Chapman,* 452 U.S. 337 (1981)("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.");

*Collins v. King,* 743 F.2d 248, 253-54 (5th Cir. 1984); *Shaw v. Murphy,* 532 U.S. 223, 228 (2001)("Traditionally, federal courts did not intervene in the internal affairs of prisons and instead 'adopted a broad hands-off attitude toward problems of prison administration.'" (quoting *Procunier v. Martinez,* 416 U.S. 396, 404 (1974))).

## IV.    Claims Based on Respondeat Superior

Vidales sues William Stephens, Director of the TDCJ-CID. Vidales has not alleged that this supervisory defendant was personally involved in any of the constitutional violations Vidales alleges. (Docket Entry No. 7, p. 1). Vidales seeks to impose liability on this defendant solely on the basis of his position as an ultimate supervisor.

Individual liability under section 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Vidales alleges that this supervisory defendant is liable for actions of his subordinates; such allegations fail to state a claim under section 1983. Vidales's claims that the individual employees at the TDCJ-CID are acting under the direction of the supervisory defendant are, as a matter of law, insufficient. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 551 (5th Cir. 1997); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). The misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor. *Southard,* 114 F.3d at 551. Vidales's claim that prison officials were acting under the direction of the supervisory defendant

does not affirmatively link the misconduct of the named prison employees to the actions of the supervisory defendants.

To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force behind the plaintiff's harm. *See Monell*, 436 U.S. at 692-94; *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The supervisor's conduct must be measured against the standard of deliberate indifference. *Alton*, 168 F.3d at 200. "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brenoettsy*, 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.* (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Vidales does not allege that this supervisory defendant was aware of and disregarded a substantial risk to Vidales's safety. Vidales does not set out specific facts showing that this defendant was personally involved in the violations of Vidales's civil rights. Vidales expressly denies that Director Stephens had any personal involvement. The claims against Director Stephens are dismissed.

## V.    Conclusion

The action filed by Ernest Vidales, (TDCJ-CID Inmate #01305837) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1). Any remaining pending motions are denied as moot.

The TDCJ-CID will continue to deduct twenty percent of each deposit made to Vidales's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail

to:

(1)   the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)   the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)   the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas, on June 4, 2015.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE